UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| MICHAEL JOSEPH | CIVIL ACTION NO. 24-1016 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| RIVERBEND DETENTION CENTER, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

**REPORT AND RECOMMENDATION**

Plaintiff Michael Joseph, a prisoner at Lafayette Parish Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately July 29, 2024, under 42 U.S.C. § 1983. He names the following Defendants: Riverbend Detention Center ("RDC"), Lieutenant Datson, Captain Frost, Nurse Frost, Lieutenant Jackson, and Lieutenant C.J.[1]

For reasons below, the Court should retain Plaintiff's Eighth Amendment claims that (1) Lieutenant Datson, Lieutenant C.J., and Captain Frost exposed him to unreasonably high levels of tobacco smoke for over seven months and (2) Nurse Frost failed to provide adequate medical care. The Court should dismiss Plaintiff's remaining claims.

**Background**

Plaintiff has high blood pressure and an enlarged prostate. [doc. # 5, p. 1]. He states that when he arrived at RDC on October 15, 2023, he informed Lieutenant Datson, Lieutenant Jackson, Lieutenant C.J., Captain Frost, and Nurse Frost that he has "prostate issues" and "breathing issues," that second-hand smoke "greatly affects [his] health in a negative way[,]" and

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

that he "cannot be around 2nd hand smoke due to [a] medical condition with [his] prostate." [doc. #s 1, pp. 3, 5; 5, p. 2]. He claims, however, that he was thereafter assigned to P-Dormitory, where indoor smoking was permitted. [doc. #s 1, p. 3; 5, p. 2].

"All of the other inmates around [Plaintiff in the dormitory] smoked cigarettes." [doc. # 5, p. 2]. There were 100 other inmates in the dormitory. *Id.* "The amount of second-hand smoke was very high as they smoked often at their bunks." *Id.* Plaintiff "could not avoid this due to [the] placement of [his] bed." *Id.* His "request to change bunks was denied on several occasions." *Id.* He alleges that his "multiple attempts to move and be placed into a medical dorm" were constantly denied and ignored. [doc. # 1, p. 3].

Plaintiff was later moved to G-Dormitory, where "conditions were the same." *Id.* "This is when [he] informed Captain Frost," who "denied help. [sic]." [doc. # 5, p. 2]. Throughout the day and night, prisoners around Plaintiff constantly smoked cigarettes. *Id.* The second-hand smoke "greatly deteriorated" his condition. [doc. # 1, p. 5]. He also suffered from coughing, headaches, dizziness, an inability to "get out of bed and take care of personal hygiene," vomiting, and dry heaving. [doc. # 5, p. 1].

Plaintiff allegedly informed Lieutenant Datson that he has medical issues with his prostate, that there was second-hand smoke in the dormitory, and that the smoke affected him, but Datson responded that there was "nothing that he could do." [doc. # 5, p. 1]. Plaintiff alleges that Lieutenant C.J. likewise told him there was "nothing he could do." Plaintiff alleges that he spoke to Nurse Frost about the second-hand smoke, but she stated that "nothing could be done." [doc. # 5, pp. 1-2]. Plaintiff claims that Lieutenant Jackson completely ignored him. [doc. # 5, p. 1].

Next, Plaintiff claims that he was "blatantly ignored" and was not provided medication after "repeatedly stressing [his] medical situations" to staff. [doc. # 1, p. 5]. Before he arrived at RDC, he was prescribed Amlodipine Besylate for high blood pressure and Ditropan Oxybutynin Chloride to reduce prostate swelling and aid urination. [doc. # 5, p. 3]. Plaintiff told Nurse Frost that he "needed to take these medications in the morning and evening," but she "took [him] off of" the medication. *Id.* at 1. When he told Nurse Frost that he was "experiencing nausea, excessive urination, chest pains, loss of appetite, [and] cold sweats" due to abruptly stopping the medications, she refused to help him get out of bed to take medications and threatened him with disciplinary actions if he did not sign a "refusal." *Id.* at 3. Plaintiff states that because he lacked medication, his "stomach started swelling due to prostate enlargement[,]" and he had "extreme difficulty using [the] bathroom." [doc. # 5, p. 1]. Nurse Frost allegedly knew Plaintiff needed his medications yet ignored his needs "in a malicious way" and treated him "as the problem," even after his family repeatedly called her. *Id.* at 3.

On June 5, 2024, Plaintiff was transferred to Lafayette Parish Correctional Center. [doc. #s 1, p. 2; 5, p. 2].

Plaintiff seeks $300,000.00 in compensation. [doc. # 1, p. 4].

**2. Entity Unamenable to Suit**

Plaintiff names RDC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

3

RDC does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against RDC.

**3. Second-Hand Smoke**

The Court should retain Plaintiff's Eighth Amendment claims that Lieutenant Datson, Lieutenant C.J., and Captain Frost exposed him to unreasonably high levels of tobacco smoke for over seven months. *See generally Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Murrell v. Casterline*, 307 F. App'x 778, 779 (5th Cir. 2008); *Bruce v. Little*, 568 F. App'x 283, 286 (5th Cir. 2014); *Black v. Concordia Par. Det. Ctr.*, 607 F. App'x 440, 441 (5th Cir. 2015). Plaintiff's allegations are not a model of clarity, but when construed liberally and in his favor he plausibly alleges that he endured a sufficiently serious deprivation of health and safety and that Datson, C.J., and Captain Frost were deliberately indifferent to a substantial risk of serious harm to him.

While Plaintiff does not allege that any Defendant initially confined him in, or assigned him to, the dormitories where he was exposed to cigarette smoke, he does allege—again when construed with deference to Plaintiff's pro se and incarcerated capacities—that these Defendants were sufficiently involved in failing to remove him from, or ameliorate, the conditions: (1) Datson, C.J., and Captain Frost knew that second-hand smoke "greatly affects" Plaintiff's health and conditions "in a negative way";[2] (2) Datson, C.J., and Captain Frost knew he was prescribed medications for "prostate issues" and "breathing issues";[3] (3) Datson knew Plaintiff did not smoke, Plaintiff informed Datson that he was exposed to second-hand smoke in the dormitories, Datson knew how the second-hand smoke affected Plaintiff, and Datson stated there was nothing

---

[2] [doc. # 1, p. 3].

[3] *Id.*

4

that he could do;[4] (4) Lieutenant C.J. stated there was nothing he could do about the smoke and refused to open a back door;[5] and (5) Captain Frost knew Plaintiff was exposed to second-hand smoke in G-Dormitory yet denied Plaintiff help.[6] Plaintiff does not definitively state that he informed these defendants of his specific symptoms from the exposure to second-hand smoke, but to recall he states that he informed these defendants of his inability to be exposed to second-hand smoke when he first arrived at RDC.

The Court should, however, dismiss Plaintiff's claims of exposure to tobacco smoke against Nurse Frost and Lieutenant Jackson because Plaintiff does not plausibly allege that either Defendant was deliberately indifferent. As to Jackson, Plaintiff alleges only: "completely ignored me when issues were brought to his attention." [doc. # 5, p. 1]. But Plaintiff does not specify which issues (for instance, his lack of medications, his exposure to smoke, or other issues) to which he refers. His allegation against Jackson is impermissibly conclusory.

As to Nurse Frost, Plaintiff alleges only that he "spoke to her about the 2nd hand smoke[.]" But he then immediately alters course and discusses Nurse Frost's involvement in his separate claim of lacking medications. *Id.* Even liberally construing his allegations and assuming Nurse Frost knew Plaintiff was exposed to harm, he does not specify how Nurse Frost responded or if Nurse Frost responded at all. Plainly, he does not allege that Nurse Frost responded with deliberate indifference. His allegations are ultimately too conclusory to state a claim on which relief may be granted.

---

[4] [doc. # 5, p. 1].

[5] *Id.*

[6] *Id.* at 2.

**4. Clean Air Act**

Plaintiff claims: "Remanded in a dorm that allowed indoor smoking which is a direct violation of the Clean Air Act." [doc. # 1, p. 5]. Plaintiff, however, does not identify a defendant responsible for remanding him to dormitories in which prisoners smoked. Otherwise stated, and as above, he does not allege that any defendant confined him in, or assigned him to, the dormitories.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Plaintiff does not sufficiently identify "any particular defendant's personal involvement in conduct that caused constitutional deprivation." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant). The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

The Court should dismiss this claim.

**5. Medical Care**

Before Plaintiff arrived at RDC, a physician prescribed him Amlodipine Besylate for high blood pressure and Ditropan Oxybutynin Chloride to reduce prostate swelling and aid urination. [doc. # 5, p. 3]. Plaintiff told Nurse Frost that he "needed to take these medications in the morning and evening," but she "took [him] off of" the medications. *Id.* at 1. When he told Nurse Frost that he was "experiencing nausea, excessive urination, chest pains, loss of appetite, [and] cold sweats" due to abruptly stopping the medications, she refused to help him get out of bed to take medications and threatened him with disciplinary actions if he did not sign a "refusal." *Id.* at 3. Because he lacked medications, his "stomach started swelling due to prostate enlargement[,]" and he had "extreme difficulty using [the] bathroom." [doc. # 5, p. 1]. Nurse Frost allegedly knew Plaintiff needed his medications yet ignored his needs "in a malicious way" and treated him "as the problem" even after his family repeatedly called her. *Id.* at 3.

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

7

any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff states a plausible claim against Nurse Frost, alleging that he had a serious medical need(s) (prostate swelling, difficulty urinating or excessive urination, high blood pressure, nausea, chest pains, loss of appetite, and cold sweats) and that Nurse Frost knew he was exposed to a substantial risk of serious harm—because Plaintiff initially told her that he needed his prescribed medications for his prostate and blood pressure and then later told her that he was suffering from various symptoms because he lacked his medications—yet for over seven months she refused to provide his medications or provide alternative treatment.[7] *See generally Est. of*

---

[7] Plaintiff does not specify when his symptoms began, but he does suggest that he lacked his medications his entire time at RDC.

*Henson v. Krajca*, 440 F. App'x 341, 344 (5th Cir. 2011) ("We have found evidence of deliberate indifference where jail nurses knew of the inmate's medical needs but ignored doctors' explicit treatment orders to meet those needs.") (citing *Lawson v. Dall. Cnty.,* 286 F.3d 257, 263 (5th Cir.2002)).

Plaintiff, however, does not state a plausible claim against the remaining Defendants, failing to allege that he informed any of them that he was exposed to a substantial risk of serious harm absent his medications. *Id.* He vaguely alleges that he informed Lieutenant Datson "about medications," but he does not specify what he told Datson about his medications. [doc. # 5, p. 1]. He alleges that his wife called Captain Frost "about medication," but again he does not specify what his wife told Captain Frost about medication. He alleges that when he arrived at RDC he informed "staff" that he has "medical problems including prostate issues" and needed "specific med[ications],"[8] but to reiterate this Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Martinez*, 846 F. App'x at 243 ("Deliberate indifference [] cannot be shown through the actions of the cumulative group."). Further, he does not specify how or if any member of the staff responded and, concomitantly, fails to allege that any defendant responded with deliberate indifference.[9]

Accordingly, the Court should retain Plaintiff's Eighth Amendment claims of lack of medical care against Nurse Frost but dismiss the claims against the remaining defendants.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Michael Joseph's claims

---

[8] [doc. # 1, p. 5].

[9] Plaintiff mentions in the ensuing sentence that an unidentified person(s) "blatantly ignored" him, but he appears to be referencing his concerns about smoking in the dormitory rather than his need for medications. *Id.*

9

against RDC, claims under the Clean Air Act, claims against Lieutenant Jackson, Eighth Amendment claim of exposure to second-hand smoke against Nurse Frost, and Eighth Amendment claims of inadequate medical care against Captain Frost, Lieutenant Datson, and Lieutenant C.J. be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 18th day of September, 2024.

_____
Kayla Dye McClusky
United States Magistrate Judge