UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **MICHAEL JOSEPH** | **CIVIL ACTION NO. 24-1016** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **RIVERBEND DETENTION CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Defendants, Lieutenant Datson, Captain Frost, Nurse Frost, and Lieutenant C.J., move for summary judgment on grounds that Plaintiff Michael Joseph failed to exhaust his available administrative remedies before filing this lawsuit.[1] Plaintiff does not oppose the motion.[2] For reasons below, the Court should grant Defendants' motion.

### Background

Plaintiff Michael Joseph, a prisoner at Lafayette Parish Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately July 29, 2024, under 42 U.S.C. § 1983. He named the following Defendants: Riverbend Detention Center ("RDC"), Lieutenant Datson, Captain Frost, Nurse Frost, Lieutenant Jackson, and Lieutenant C.J. On October 9, 2024, the Court dismissed Plaintiff's claims against RDC, his claims under the Clean Air Act, his claims against Lieutenant Jackson, his Eighth Amendment claim of exposure to second-hand smoke against Nurse Frost, and his Eighth Amendment claims of inadequate

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[2] *See* doc. # 15 ("Any party filing no brief will be deemed not to oppose the motion.").

medical care against Captain Frost, Lieutenant Datson, and Lieutenant C.J. [doc. #8]. The Court retained Plaintiff's Eighth Amendment claims (1) that Lieutenant Datson, Lieutenant C.J., and Captain Frost exposed him to unreasonably high levels of tobacco smoke for over seven months and (2) that Nurse Frost failed to provide adequate medical care.

Plaintiff alleges that he endured a serious deprivation of health and safety and that Datson, C.J., and Captain Frost were deliberately indifferent to a substantial risk of serious harm to him. While he does not allege that any Defendant initially confined him in or assigned him to the dormitories where he was exposed to cigarette smoke, he does allege that these Defendants were sufficiently involved in failing to remove him from or ameliorate the conditions: (1) Datson, C.J., and Captain Frost knew that second-hand smoke "greatly affects" Plaintiff's health and conditions "in a negative way";[3] (2) Datson, C.J., and Captain Frost knew he was prescribed medications for "prostate issues" and "breathing issues";[4] (3) Datson knew Plaintiff did not smoke, Plaintiff informed Datson that he was exposed to second-hand smoke in the dormitories, Datson knew how the second-hand smoke affected Plaintiff, and Datson stated there was nothing that he could do;[5] (4) Lieutenant C.J. stated there was nothing he could do about the smoke and refused to open a back door;[6] and (5) Captain Frost knew Plaintiff was exposed to second-hand smoke in G-Dormitory yet denied Plaintiff help.[7] Plaintiff states that he informed these Defendants of his inability to be exposed to secondhand smoke when he first arrived at RDC.

---

[3] [doc. # 1, p. 3].

[4] *Id.*

[5] [doc. # 5, p. 1].

[6] *Id.*

[7] *Id.* at 2.

2

As to the claim against Nurse Frost, Plaintiff alleges that he had a serious medical need(s) (prostate swelling, difficulty urinating or excessive urination, high blood pressure, nausea, chest pains, loss of appetite, and cold sweats) and that Nurse Frost knew he was exposed to a substantial risk of serious harm—because Plaintiff initially told her that he needed his prescribed medications for his prostate and blood pressure and then later told her that he was suffering from various symptoms because he lacked his medications—yet for over seven months she refused to provide his medications or provide alternative treatment.[8]

Plaintiff arrived at RDC on October 15, 2023. [doc. #s 1, pp. 3, 5; 5, p. 2]. He was transferred to Lafayette Parish Correctional Center on June 5, 2024. [doc. #s 1, p. 2; 5, p. 2].

## Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

---

[8] Plaintiff does not specify when his symptoms began, but he does suggest that he lacked his medications his entire time at RDC.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[9]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[9] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[10] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

B. <u>Exhaustion Principles</u>

Under 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua,* 342 Fed. App'x. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford,* 548 U.S. at 89–93). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

---

[10] I.e., beyond doubt.

some other wrong." *Porter,* 534 U.S. at 532 (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton,* 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. *See, e.g.*, *Williams v. Henagan,* 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas,* 76 Fed. App'x. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

"Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015).

Exhaustion is an affirmative defense; thus, the burden is on the defendant to establish that the plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). If a defendant meets this burden, a court has no discretion to excuse the plaintiff's failure. *Gonzales v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012).

C. Analysis

Defendants argue that "Plaintiff failed to properly exhaust the available administrative remedies as required by 42 U.S.C. § 1997e." [doc. # 14].

Defendants present evidence showing: (1) that RDC maintains a three-step administrative remedy procedure ("ARP");[11] (2) the ARP is explained to all inmates when they are processed into the detention center;[12] (3) the ARP is contained in the RDC Offender Handbook;[13] and (4) the ARP is written on electronic grievance forms.[14] Defendants also attach Plaintiff's "signed

---

[11] [doc. #s 14-3, p. 1; 14-4].

[12] [doc. # 14-3, p. 1].

[13] *Id.*

[14] *Id.*

6

receipt indicating that the grievance procedure was explained to him and that he received a copy of it in his offender handbook." [doc. #s 14-3, p. 2; 14-5].

Under the ARP, "Grievance forms may be accessed through the Securus kiosk located in each dorm." [doc. # 14-4, p. 1]. The ARP states further that when an offender files a grievance under the first step of the procedure, the offender "will be given an answer within thirty (30) days excluding weekends and holidays of the date of receipt of [the] grievance." *Id.* Under the second step, offenders may appeal "in the event the first response was not satisfactory." *Id.* "An answer to the second step review will be given within twenty-five (25) days . . . ." *Id.* "Offenders may request a third step appeal to the Warden and/or Sheriff. The offender will receive a response" within forty days. *Id.*

The warden of RDC, Warden Hedgemon, declares that the electronic "kiosk keeps a record of all grievances that have been filed" and that "no grievances [were] found in Plaintiff's kiosk history" after a search on May 9, 2025. [doc. # 14-3, p. 2]. Defendants attach a copy of the "search results," which indicate only that Plaintiff filed offender request forms. [doc. # 14-6]. He did not, however, include any of the extant claims or allegations from this proceeding in any of the request forms.[15] [doc. # 14-7]. Consequently, he did not begin the ARP—much less

---

[15] Of note, Plaintiff indicated, "No," in his initial form complaint where the form asks if he filed "an administrative grievance based upon the same facts which form the basis of this lawsuit." [doc. # 1, p. 2]. Then, when asked to explain why he did not file an administrative grievance, Plaintiff wrote, "A petition was sent to the U.S. District Court Western District of Louisiana for the violation of the Clean Air Act." *Id.* Thus, Plaintiff appears at first glance to concede lack of exhaustion. To be fair though, Plaintiff perhaps thought that the form was asking if he filed an administrative grievance at Lafayette Parish Correctional Center, the facility to which he was transferred. Immediately before the question concerning the filing of a grievance, the form instructed Plaintiff to name his current place of confinement, which is Lafayette Parish Correctional Center and not RDC. The form then asks, "Is there a prison grievance procedure at this institution[,]" and "[d]id you file an administrative grievance . . . .?" *Id.* Plaintiff's concession on the initial pleading is, therefore, ambiguous and not dispositive.

7

timely complete it—before filing this proceeding. He never gave "officials a fair opportunity to address the problem[s] that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).

Defendants have met their initial summary judgment burden of demonstrating the absence of a genuine dispute of material fact by pointing out that the record contains no support for Plaintiff. As above, Plaintiff does not oppose the instant motion and does not identify anything in the record to show that he exhausted his claims. He therefore does not genuinely dispute that RDC maintained an ARP which was available to him and that he failed to file any grievance under the ARP concerning the extant claims before filing this lawsuit.[16] Defendants are therefore entitled to judgment as a matter of law.

Although dismissal for failure to exhaust administrative remedies is typically without prejudice,[17] the Court is authorized to dismiss Plaintiff's claims with prejudice with respect to his right to re-file them in forma pauperis ("IFP"):

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled—that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff's] action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock,* 549 U.S. 199, 216 (2007)).

---

[16] *See Trojanowski v. Vasquez*, 2021 WL 3778704, at *1 (5th Cir. Aug. 25, 2021) (affirming that the prisoner failed to exhaust where uncontroverted evidence showed that the prisoner received a copy of the prison's regulations detailing the grievance procedure, there was no evidence of a grievance filed, and the prisoner did not "show these procedures were unavailable to him.").

[17] *See, e.g., Cooper v. Quarterman,* 342 Fed. App'x. 12, 13 (5th Cir. 2009).

The foregoing approach is appropriate here.  Plaintiff may present these claims to the Court once more only if he exhausts his administrative remedies, but he may not proceed in forma pauperis if he presents the claims again.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, [doc. # 14], be **GRANTED** and that Plaintiff Michael Joseph's remaining claims be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies but **WITH PREJUDICE** for purposes of proceeding in forma pauperis under 28 U.S.C. § 1915.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 11th day of September, 2025.

                                                               _Kayla Dye McClusky_
                                                               Kayla Dye McClusky
                                                               United States Magistrate Judge